**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CARL E. PANNELL, JR.,

              Plaintiff,

v.

PROTECTION STRATEGIES, INC.,

              Defendant.

Civ. Action No. 21-602
(EGS)

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Carl E. Pannell, Jr. ("Mr. Pannell"), proceeding *pro se*, brings this lawsuit against Protection Strategies, Inc. ("PSI") alleging defamation by PSI that resulted in him being found unsuitable for federal employment and contractual federal employment. *See generally* Compl., ECF No. 1-1. Pending before the Court is PSI's Motion to Dismiss. *See* ECF No. 6. Upon careful consideration of the motion, the opposition and reply thereto, and the applicable law, PSI's Motion to Dismiss is **DENIED.**

I. **Factual Background**

The Court assumes the following facts alleged in the complaint to be true for the purposes of deciding this motion and construes them in Mr. Pannell's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015). From May 15, 2018 to June 1, 2018, Mr. Pannell was employed by PSI as a Personnel Security

Specialist, located in a building occupied by the Department of Justice. Compl., ECF No. 1-1 ¶¶ 1, 5. During his employment, he was not reprimanded for any behavior, but his supervisor was "insolent" and "demeaning" to him and so he requested that he be trained by another PSI employee. *Id*. ¶¶ 6, 8, 9. On May 25, 2018, he was informed by a PSI manager that his complaints about his supervisor would be investigated. *Id*. ¶ 10. Thereafter, on June 1, 2018, he was informed via a telephone call that his employment was terminated but was not given the reason for his termination. *Id*. ¶ 14. He later learned that the reason for his termination was "contrived" by the supervisor about whom he had complained based on her animus towards him. *Id.* ¶ 14. In February 2020, he was interviewed by a federal investigator as part of a federal background investigation. *Id*. ¶¶ 17, 21. In December 2020, he learned that PSI had informed the investigator that he had been involuntarily terminated because he "had inquired how to search individuals in the Department of Justice's database system to obtain personal information." *Id*. ¶ 20. Mr. Pannell alleges that this statement is false, see *id*. ¶ 7; and that it has resulted in him losing several employment opportunities, see *id*. ¶ 21.

## II.   Standards of Review

### A. Rule 12(b)(1): Subject Matter Jurisdiction

"A federal district court may only hear a claim over which [it] has subject matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction." *Gregorio v. Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017) (citation and internal quotation marks omitted). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992). Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (citations omitted). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because "[o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further." *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (citations and internal quotation marks omitted).

**B. Rule 12(b)(6): Failure to State a Claim**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."

4

*Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A "*pro se* complaint is entitled to liberal construction." *Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009) (citation omitted). Even so, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

## III. Analysis

### A. The Court Has Jurisdiction Over Mr. Pannell's Defamation Claim

PSI argues that the Court lacks subject matter jurisdiction over Mr. Pannell's defamation claim "because [the] Complaint necessarily implicates a decision to deny a security clearance." Mot. to Dismiss, ECF No.6-1 at 8. The Court notes that the Complaint does not allege a decision to deny a security clearance, but rather that Mr. Pannell was "[f]ound unfavorable/questionable to [sic] federal background investigations" and "[u]nsuitable for Federal employment and contractual Federal employment." Compl., ECF No. 1-1 ¶ 21. The Court is persuaded that it has jurisdiction over Mr. Pannell's defamation claim because the two cases upon which PSI relies are distinguishable.

In *Dept. of the Navy v. Egan*, Mr. Egan sought review of the denial of his security clearance by the Merit Systems Protection Board ("Board"). 484 U.S. 518, 522 (1988). The Supreme Court held that the Board was without authority "to review the substance of an underlying security clearance determination in the course of reviewing an adverse action" because "[i]t is not reasonably possible for an outside, nonexpert body to review the substance of such a judgment . . . ." *Id*. at 520, 529. In *Ryan v. Reno*, plaintiffs alleged employment discrimination based on

national origin and citizenship based on withdrawn offers of
employment by the Department of Justice and the Immigration and
Naturalization Service. 168 F.3d 520, 522 (D.C. Cir. 1999). The
offers were withdrawn because, due to the plaintiffs having
lived in Ireland for a number of years, it would not be possible
to conduct the background investigation needed for the security
clearances the plaintiffs needed to perform their jobs. *Id*. The
Court of Appeals for the District of Columbia Circuit affirmed
the district court's dismissal for lack of jurisdiction based on
the Supreme Court's decision in Egan. *Id*. The court reasoned
that to determine the merits of the Title VII claim, it would
need to review the merits of DOJ's decision to withdraw the
offers of employment. Specifically, under the second step of the
burden-shifting framework set forth in *McDonnell Douglas Corp.
v. Green*, 411 U.S. 792, 802-05 (1973),[1] the Court would need to
review the employer's articulation of its legitimate,
nondiscriminatory reason for its adverse employment action. *Id*.
at 523. Accordingly, the court held "that under Egan, an adverse

---

[1] Under this framework, "[t]o state a prima facie case of
discrimination, a plaintiff must allege [he] is part of a
protected class under Title VII, [he] suffered a cognizable
adverse employment action, and the action gives rise to an
inference of discrimination." *Stella v. Mineta,* 284 F.3d 135,
145 (D.C. Cir. 2002). "If the plaintiff clears that hurdle, the
burden shifts to the employer to identify the legitimate,
nondiscriminatory or non-retaliatory reason on which it relied
in taking the complained-of action." *Holcomb v. Powell,* 433 F.3d
889, 896 (D.C. Cir. 2006).

employment action based on denial or revocation of a security clearance is not actionable under Title VII." *Id.* at 524.

Here, Mr. Pannell is not challenging the unsuitability determination itself; rather he alleges that PSI defamed him when it informed the investigator of the reason for his involuntary termination because the reason that was given is false. To determine whether Mr. Pannell has stated a claim for defamation, it is not necessary for the Court to reach the merits of the unsuitability determination. Accordingly, the Court has subject matter jurisdiction over his defamation claim.

**B. Mr. Pannell Has Stated a Claim for Defamation**

To state a claim for defamation under District of Columbia law, Mr. Pannell "must allege that sufficient facts to establish: '(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's statement in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.'" *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155 (D.D.C. 2018) (quoting *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140-41 (D.D.C. 2017) (quoting *Solers, Inc., v. Doe*, 977 A.2d 941, 948 (D.C. 2009)).

With regard to the second element, "[q]ualified or conditional privileges 'are based upon a public policy that recognizes that it is desirable that true information be given whenever it is reasonably necessary for the protection of the actor's own interests, the interests of a third person or certain interests of the public.'" *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (quoting RESTATEMENT (SECOND) of Torts, title B introductory note (1997)). "A statement is protected by the common interest privilege if it is '(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty (3) to a person who has such a corresponding interest or duty.'" *Payne v. Clark*, 25 A.23d 918, 925 (D.C. 2011) (quoting *Moss*, 580 A.2d at 1024). "Whether a statement is privileged is a question of law." *Id.* (citing *Carter v. Hahn,* 821 A.2d 890, 894 (D.C. 2003).

"If a statement is subject to the common interest privilege, 'the burden is on the plaintiff to prove the privilege has been abused.'" *Id.* (citing *Blodgett,* 930 A.2d at 224. "Where the court determines that the common interest privilege is applicable, the defendant will be presumed to have been actuated by pure motives in its publication [, and] [i]n order to rebut this presumption, express malice or malice in fact must be shown [by the plaintiff]." *Moss*, 580 A.2d at 1024

(citing *Ford Motor Credit v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977) (other citation omitted). "Unless the statement itself is 'so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that the defendant was actuated by express malice,' malice must be proved by extrinsic evidence." *Id.* (internal quotation marks and citation omitted). "Whether a person acts with malice is ordinarily a question of fact for the jury." *Oparaugo v. Watts*, 884 A.2d 63, 82 (D.C. 2005).

PSI take issue only with the second element of defamation, arguing that a qualified privilege applies because the statement was published by PSI in its role as Mr. Pannell's former employer and Mr. Pannell has failed to allege facts to establish malice.[2] Mot. to Dismiss, ECF No. 6-1 at 12. The Court agrees with PSI in part as it is well-settled under District of Columbia law that there is a qualified privilege for anything "said or written by a master in giving the character of a servant who has been in his [or her] employment." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 879 (D.C.

---

[2] PSI also asserts that Mr. Pannell's "defamation claim fails because PSI had a common interest privilege in responding to an inquiry by federal security authorities as to the reason underlying [his] termination" but provides no legal support for its assertion. Mot. to Dismiss, ECF No. 6-1 at 13. However, the Court need not reach this argument as it has determined that a qualified privilege applies to PSI's statement to the federal investigator.

10

1998) (internal quotation marks and citation omitted)
(collecting cases). Accordingly, as a matter of law, PSI's
statement to the investigator is privileged. Since it is a
qualified privilege, however, Mr. Pannell's burden is to
overcome the presumption that the statement was "actuated by
pure motives" by showing malice on the part of PSI, which here
"must be proved by extrinsic evidence." *Moss*, 580 A.2d at 1024.

Making all inferences in Mr. Pannell's favor, as the Court
must at this juncture, the Court is persuaded that he has
adequately alleged that PSI was "motivated primarily by bad
faith or ill will or enmity" in publishing the allegedly false
statement. *Id.* at 1026 n.29. Specifically, Mr. Pannell has
alleged that his supervisor, who had treated him in an insolent
and demeaning manner, and whose behavior was going to be
investigated by PSI, contrived the false reason for his
termination based on her ill will toward him. Compl., ECF No. 1-
1 ¶¶ 6, 8, 10. Assuming this to be true, as the Court must at
this juncture, the Court can infer that because the statement
was false, it was published to the investigator primarily to
show malice toward Mr. Pannell rather than to further the
purpose of the qualified privilege. *See Payne*, 25 A.3d at 926.

PSI argues that Mr. Pannell has failed to allege facts that
establish malice because he has not alleged that his supervisor
was involved in publishing the statement to the federal

investigator. However, Mr. Pannell did allege that his supervisor contrived the reason for his termination and that the false reason for his termination was published by PSI to the investigator. Compl., ECF No. 1-1 ¶¶ 14, 20. Accordingly, PSI's argument is without merit.

**IV. Conclusion and Order**

For the reasons explained above, it is

**ORDERED** that PSI's Motion to Dismiss, ECF No. 6, is **DENIED.**

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **February 22, 2022**