UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL E. PANNELL, JR., <br><br> Plaintiff, <br><br> v. <br><br> PROTECTION STRATEGIES, INC., <br><br> Defendant. | No. 21-cv-602-EGS-ZMF |

**REPORT AND RECOMMENDATION**

In this case, Plaintiff Carl E. Pannell, Jr. sues his former employer, Protection Strategies, Inc. ("PSI"), for defamation. *See* Compl., ECF No. 1-1. Pannell alleges that PSI made defamatory statements about the circumstances of his termination which have cost him subsequent employment opportunities. *See id.* ¶¶ 18–21. Pending before the Court is PSI's Motion for Summary Judgment, which the undersigned recommends GRANTING.

**I.     BACKGROUND**

   A.     Facts

On May 14, 2018, Pannell began employment as a Personnel Security Specialist with PSI. *See* Def.'s Statement Material Facts ("Def.'s SOF") ¶ 1, ECF No. 20-2; Pl.'s Resp. Def.'s Statement Material Facts ("Pl.'s SOF") 3, ¶ 1, ECF No. 26-2. Part of Pannell's job duties was to perform background checks using information from certain databases. *See* Pl.'s SOF 16, ¶ 1. On June 1, 2018, PSI fired Pannell. *See* Def.'s SOF ¶ 3; Pl.'s SOF at 3, ¶ 3. PSI informed Pannell that one reason for his termination was that Pannell inquired about how to use a database to access sensitive information about people he knew personally. *See* Def.'s Mem. P. & A. Supp. Mot. Summ. J. ("Def.'s Mot.") 2, ECF No. 20-1; Def.'s Mot., Ex. 4 ("Termination Letter"), ECF No.

1

20-4. Pannell disputes that he ever made such an inquiry. *See* Compl. ¶ 7; Mem. Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") 21, ECF No. 26-1.

Two other companies subsequently hired Pannell. *See* Def.'s SOF ¶¶ 12, 17; Pl.'s SOF at 9, ¶¶ 12, 17. Pannell recalled that at least one of the two did not require him to pass a background investigation prior to employment; he does not know whether the other did. *See* Def.'s SOF ¶¶ 12, 16–18; Pl.'s SOF at 9–10, ¶¶ 13–15, 17–18. On November 18, 2019, Pannell began working for a federal contractor in a role that required Pannell to pass a background investigation. *See* Def.'s SOF ¶¶ 19–21; Pl.'s SOF at 10, ¶¶ 19–21. In February 2020, a federal investigator interviewed Pannell as part of the background investigation. *See* Def.'s SOF ¶¶ 22–25; Pl.'s SOF at 10–11, ¶¶ 22–25. The investigator asked Pannell about his termination from PSI "for looking people up in the database." Def.'s SOF ¶ 24; Pl.'s SOF at 11, ¶ 24. Pannell does not know the name of the investigator, nor could he find any other evidence about this alleged interaction. *See* Def.'s SOF ¶ 25; Pl.'s SOF at 11, ¶ 25.

In September 2020, Pannell's position with the federal contractor was eliminated. *See* Def.'s SOF ¶¶ 29–30; Pl.'s SOF at 12, ¶¶ 29–30. Pannell alleges that he then lost two potential employment opportunities due to problems with his background investigation. *See* Def.'s SOF ¶¶ 31–36; Pl.'s SOF at 12–14, ¶¶ 31–36. One employer rescinded Pannell's employment offer because the "adjudication processing" was taking too long. *See* Pl.'s SOF at 13–14, ¶¶ 35–36. There is no evidence regarding why the process was taking too long. *See id.* In Pannell's telling, a former colleague informed Pannell that PSI told the investigator that Pannell had inquired how to use a database inappropriately. *See* Compl. ¶ 20; Pl.'s Opp'n at 21; Pl.'s SOF at 17, ¶ 8. Pannell does not know who at PSI had that conversation with the also-unknown investigator. *See* Def.'s

SOF ¶ 28; Pl.'s SOF at 12, ¶ 28. There is no evidence regarding why the second employment offer was rescinded. *See* Def.'s SOF ¶ 36; Pl.'s SOF at 14, ¶ 36.

Pannell assumes that he lost the two job opportunities because PSI told the federal investigator about his termination and the surrounding circumstances. *See* Pl.'s Opp'n at 21–22, 29. Pannell's assumption stems from the fact that "it is certain that [he] was not hired by any of these companies and that the last step of the recruiting/selection process for both jobs . . . was the background check." Pl.'s Opp'n at 22. There is no other evidence that Pannell was the subject of any unsatisfactory background investigation, nor if so, why it was unsatisfactory.

Plaintiff currently works at the IRS as a Staff Support Assistant. *See* Def.'s SOF ¶¶ 37–39; Pl.'s SOF at 14–15, ¶¶ 37–39. Plaintiff does not recall whether his current position required a background investigation. *See* Def.'s SOF ¶ 39; Pl.'s SOF at 15, ¶ 39.

B.   Procedural History

On March 5, 2021, Pannell filed this suit. *See* Compl. Pannell initially proceeded *pro se* but is now represented by counsel. *See* Pl.'s Opp'n at 22. After the close of discovery, PSI moved for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 20. In opposition, Pannell sought additional discovery under Federal Rule of Civil Procedure 56(d), arguing that he did not have adequate opportunity in discovery to obtain information necessary to oppose the motion. *See* Pl.'s Opp'n at 30–31; Pl.'s Opp'n, Ex. 7, Rule 56(d) Aff. Robert Maxwell, ECF No. 26-7.

On April 19, 2023, Judge Sullivan referred this case to the undersigned for full case management. *See* Min. Order (Apr. 19, 2023). On October 13, 2023, the undersigned held a hearing and ordered the limited reopening of discovery under Rule 56(d). *See* Joint Status Report 1, ECF No. 28. That discovery closed on January 12, 2024. *See id.* at 2. Pannell did not learn any information that necessitated additional briefing. *See* Joint Status Report, ECF No. 29. On

February 15, 2024, the Court held oral argument on the motion for summary judgment. *See* Min. Entry (Feb. 15, 2024). The motion is now ripe for decision.

## II. LEGAL STANDARDS

### A. Summary Judgment

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The inquiry of the court, therefore, is . . . to determine if there is 'evidence on which the jury could reasonably find for the plaintiff.'" *Howard v. Fed. Express Corp.*, 316 F. Supp. 3d 234, 241 (D.D.C. 2018) (quoting *Anderson*, 477 U.S. at 252). The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

In evaluating motions for summary judgment, the Court must review all evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam). In doing so, the Court must not assess credibility or weigh the evidence. *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). A genuine issue for trial must be supported by affidavits, declarations, or other competent evidence. *See* Fed. R. Civ. P. 56(c). But if the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

B.     Defamation

District of Columbia defamation law governs this case. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 n.6 (D.C. Cir. 2015) (finding that D.C. defamation law governs where the parties agree that it governs, the parties relied on D.C. law in their briefing, and the relevant conduct allegedly occurred in D.C.).

"To state a claim for defamation under D.C. law, a plaintiff must allege '(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm.'" *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 272 (D.D.C. 2017) (quoting *Farah v. Esquire Mag.*, 736 F.3d 528, 533–34 (D.C. Cir. 2013)).

First, "the defamatory meaning inquiry focuses only on whether a reasonable reader *could* understand a statement as tending to injure a plaintiff's reputation." *Id.* at 273 (quoting *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994)). "It is not enough, however, that the statement be capable of being understood as having the implied meaning. A plaintiff must present 'affirmative evidence suggesting that the defendant intends or endorses the defamatory inference' through 'the particular manner or language in which the true facts are conveyed.'" *Howard*, 316 F. Supp. 3d at 244 (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)). "The next element of a defamation claim—publication—requires a defendant to have "*published* or knowingly participated in publishing the defamation." *Zimmerman*, 246 F. Supp. 3d at 273 (citing *Tavoulareas v. Piro*, 759 F.2d 90, 136 (D.C. Cir. 1985)). Third, the publication must occur "intentionally or by a negligent act." *Id.* (quoting Restatement (Second) of Torts § 577(1) (1977)). Finally, "[a] valid claim for defamation also requires a showing of legal harm (i.e., defamation per se) or special harm as a result of the publication. As relevant here, a statement

5

constitutes defamation per se when it 'imput[es] to a person a . . . matter affecting adversely a person's fitness for trade, business, or profession[.]'" *Id.* (quoting *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978)).

## III. DISCUSSION

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Thus, summary judgment is appropriate if a plaintiff cannot make out one of the elements of a defamation claim, irrespective of genuine disputes over the other elements. *See id.*

The problem with Pannell's claim is the second element: publication. Pannell puts forth two pieces of evidence in support of his assertion which the Court rejects in turn.

First, Pannell asserts that PSI admitted in a motion to dismiss that it had published the defamatory statement. *See* Pl.'s SOF at 17, ¶ 10; Pl.'s Opp'n, Ex. 4, Mem. Supp. Def. PSI's Opposed Mot. Dismiss Pl.'s Compl. ("Def.'s MTD") 9, ECF No. 26-6. But Pannell misreads that motion. The motion to dismiss standard requires a court to accept the allegations in the complaint as true. *See Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009). In turn, PSI argued that even *if* it had published the allegedly defamatory statement, doing so would have been protected by privilege. *See* Def.'s MTD at 9. As PSI has explained, PSI was not admitting Pannell's allegation. *See* Def.'s Reply Mem. Supp. Mot. Summ. J. ("Def.'s Reply") 10–11, ECF No. 27. Rather, PSI was arguing why it should prevail even if the publication allegation was true—as the court was required to assume. *See id.* at 11. PSI's motion is not evidence that it published the defamatory statement. *See id.*; *cf. U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. 95-cv-1231, 2007 WL 851871, at *1 (D.D.C. Mar. 14, 2007) (refusing "to bind" a party "to a legal argument advanced, in the alternative, in one paragraph in one brief" when it was "an argument taken out of context, at that").

6

Second, Pannell offers testimony from his own deposition that a former coworker, Ms. Nakeya Miller, told Pannell that PSI told a federal investigator of "an untrue, unfounded and malicious statement pertaining to the termination of [Pannell's] employment from PSI." Pl.'s SOF at 17, ¶ 8 (citing Def.'s Mot., Ex. 1, Dep. of Carl E. Pannell, Jr. 121:1–4, ECF No. 20-3). Pannell offers no supporting testimony from Ms. Miller, despite having deposed her. *See id.*; *see also* Pl.'s Opp'n, Ex. 2, Dep. of Nakeya Miller ("Miller Dep."), ECF No. 26-4. Indeed, Ms. Miller's deposition did not address the topic. *See* Miller Dep. Moreover, Pannell has not identified the federal investigator to whom the statement was allegedly told, let alone deposed them. *See* Pl.'s SOF at 11, ¶ 25. Nor does Pannell know who at PSI allegedly spoke to the unnamed investigator. *See id.* at 12, ¶ 28. In fact, supplemental discovery—which was tailored to find answers to these very questions—revealed that the PSI employee suspected by Pannell as speaking with the investigator had no such conversation. *See* Joint Status Report 2, ECF No. 28; Joint Status Report 1, ECF No. 29. Instead, Pannell relies only on his own testimony that something was said by someone to someone else at some time. *See* Pl.'s SOF at 17, ¶ 8.

"To survive a motion for summary judgment, a plaintiff must rely on evidence that is 'capable of being converted into admissible evidence.'" *Howard*, 316 F. Supp. 3d at 244–45 (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)). For example, in *Howard*, Mr. Alfred Howard brought a defamation claim against FedEx after being fired from his role as a courier when packages went missing from his assigned route. *See id.* at 238–39. Mr. Howard alleged that the FedEx security guard who led the investigation into the missing packages defamed Mr. Howard by telling Mr. Howard's coworker, "[f]orget about Al. You don't know the whole truth about Al." *Id.* at 240. However, at summary judgment, Mr. Howard offered only his own testimony to support the story of this conversation: neither the

7

security guard nor the former coworker provided evidence of the conversation. *Id.* The court found that Howard's testimony was hearsay that was incapable of being converted into admissible evidence. *Id.* at 245. (citing *Gleklen*, 199 F.3d at 1369). Thus, summary judgment for FedEx was merited. *See id.*

As with *Howard*, "[t]he problem with [Pannell's] claim is that there is no admissible evidence to support it." 316 F. Supp. 3d at 244–45. "[Pannell]'s account of the conversation . . . is inadmissible hearsay." *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 224 (D.D.C. 2004) (citing Fed. R. Evid. 801(c)). For this reason, Pannell "cannot 'possibly prevail at trial unless one or more persons could be found to testify to having received the alleged defamations.'" *Id.* (quoting *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 43 (D.C. Cir. 1990)). Pannell has found no such persons, even after two rounds of discovery. *See supra.* Indeed, there is no admissible evidence that such people exist. "[Pannell] fails . . . to put forward admissible evidence in support of this claim, and, as a result, cannot survive [PSI's] Motion for Summary Judgment.[1] *Id.* (citing Fed. R. Civ. P. 56(e)).

## IV.  RECOMMENDATION

The Court recommends GRANTING Defendant's Motion for Summary Judgment.

## V.  REVIEW BY THE DISTRICT COURT

The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to this Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen

---

[1] It appears that other elements of Pannell's defamation claim are also deficient. For example, with respect to the defamatory meaning inquiry, Pannell offered no "affirmative evidence suggesting that the defendant intend[ed] or endorse[d] the defamatory inference' through 'the particular manner or language in which the true facts [we]re conveyed.'" *Howard*, 316 F. Supp. 3d at 244 (quoting *White*, 909 F.2d at 520). But because there is insufficient admissible evidence regarding publication, the Court need not decide whether Pannell sufficiently established other elements. *See Anderson*, 477 U.S. at 248.

days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

Date: March 6, 2024

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE